May it please the Court, my name is Peter Camille. I represent Yuval Derei. I was also trial counsel for Mr. Derei. The essence of the issues that we raise today is whether or not it is unfairly prejudicial to inform a jury that a defendant is essentially an  I'm going to talk about his visa extension applications in a case where he is charged with conspiracy to commit wire fraud and extortion. And we've broken this issue into separate parts, including whether or not the false statement charges were improperly joined to begin with, whether or not it was error to fail to sever the false statement charges prior to trial, and whether or not the evidence of these false statements in the visa applications could have come before the jury in any event under other Act 404B type analysis. Mr. Derei? Assuming we agree with you that the counts never should have been joined or in the alternative should have been severed, if there was any – should have been – yeah. If we agree with you, why was there any prejudice? Why was this not harmless error? Mr. Derei was, the Court's word, he was originally charged not only with a conspiracy count for which he was convicted, but with several substantive counts of wire fraud and extortion. And at the end of the government's case-in-chief, Judge Burgess dismissed all of the substantive counts for insufficiency of evidence. He also dismissed the false statement charges for insufficiency of evidence. In this case, of the – of all the defendants that were convicted in this case, the evidence against Mr. Derei was clearly the weakest. He had been at the company the shortest period of time. The company had been in operation for almost a year before he moved to Seattle, although he had participated in one move a couple months before that. The jury in this case was given a special verdict. This case was handled in this interim period after Blakely and before Booker. And so there was a bifurcation in this case. And the jury received a special verdict where they had answered specific questions. And they found that Mr. Derei's role in the case was limited to $30,000 to $70,000 and that the victims that he was involved with were just one. And if you look at the witnesses who testified at the trial, the government called in excess of 50 witnesses at this trial. But, Counsel, doesn't that show, then, that the jury was able to second out Mr. Derei's culpability and was not unreasonably influenced by the fact that perhaps these charges should not have been joined or should have been severed? Well, I don't think that it does. We don't – we'll never know what impact the jury, having heard the opening statement, heard the testimony of Special Agent Kagan and had these false statements back in the jury room, played on the jury. But I would suggest that what this really shows is that the actual evidence against Mr. Derei was very limited. Well, I've got to ask, why was the false statement charge dismissed? I mean, you just said and acknowledged in the – not as a confession, but you've acknowledged that there is evidence to the effect that he worked – I think it was January?  And the jury concluded he was involved in the $30,000 to $70,000 and so forth. And the false statement, as I understand it, is the statement that said, I'm not working, I haven't worked. So why was the false statement charge dismissed, at least the latter in time, when it seems to me that there was not insufficient evidence? There was exactly the evidence that was needed to prove that. Well, what I can tell you is that the order issued by Judge Burgess indicates it was dismissed for insufficiency of evidence. May I? Any argument beforehand to suggest what the insufficiency might have been? No. At the end of the government's case in chief, we argued in general that all the cases should be dismissed for insufficiency of evidence, and we argued – we renewed our motion to sever. Now, it may have been that Judge Burgess, just as a practical matter, saw this as a de facto severance by dismissing the charges. But the language that he used in his order that he issued was that the dismissal was for insufficiency of evidence. Was there any discussion regarding the materiality of the false statement? That was the only basis I could think of that might justify a dismissal. Well, the evidence that the government introduced on the false statement charges, apart from their opening statement, were simply the forms. There were two application forms where there are boxes to check. You check yes or no as to whether or not you've been employed during the past period of time that you've been in the country, and box no was checked. And that was the only evidence that was introduced as to Mr. Derry's intent to falsify the forms. Was that the only evidence? Beyond the evidence of his participation and that he was working, which clearly could have come in as part of the trial on the conspiracy charge, was the only evidence submitted with regard to the false statement charge the forms themselves? Only other evidence? And if the answer to that question is yes, then I have to go back to Judge Rawlinson's question. How could the submission of those forms have made any impact upon the jury with regard to the conspiracy charge? Well, what you see, what the jury sees is by bringing in those false statement charges, you're also telling the jury that this guy isn't supposed to be in the country. He's an illegal alien. He's falsified the documentation that lets him remain in the country. And particularly in this day and age, that is a particularly prejudicial fact to put in front of the jury. And I would submit to the Court, would we allow a jury to – let's say that the charge was robbery or car theft or any other crime. Would we allow a jury to hear that a person is illegally in the country, that they're an illegal alien? And I think that's really what's going on here. But this is different, isn't it? Because I look at the indictment in the case, and the indictment specifically alleges that part of the conspiracy was that the owners and employees of Nationwide would make false and misleading statements to the Immigration and Naturalization Service. So the allegation of false statements to the INS was specifically alleged as part of the conspiracy that Mr. Dury was convicted of. I don't see the argument about improper joinder, at least as – insofar as the April 03 statement is concerned. Well, I guess I – the way the government argued the case to the jury, they didn't argue the case – they ended up not arguing the false statement charges at all at the end of the case. And I think that's because they'd have a hard time showing the connection. Anyone who's illegally in the country and commits a crime, you could go back and you could say, well, they're being here illegally facilitated their being able to commit the crime. The question here is, is this charge, this false statement charge, or the two of them, improperly joined? It seems to me that if he was charged with conspiracy that was ongoing as of April of 03, and that one of the objects of the conspiracy was to make false statements to the INS, I'm not sure I'm following the argument about improper joinder. Those things seem to me to be related.  The test for joinder is whether or not the charges are of the same or similar character, or whether they – based on the same transaction, or whether they're part of a common scheme or plan, and perhaps that's the prong that Your Honor is getting to. But even if they were properly joined, we moved to sever, and Judge Burgess denied severance, and then dismissed the charge but denied our motion to strike the evidence. Now, at that point, the trial judges decided those charges shouldn't have come before the jury, but is letting the evidence of false statements come before the jury. Was the indictment read to the jury at the beginning of the case? No. Not in full. Did they get a copy of the indictment in the jury room when they deliberated? No. In Judge Burgess's court, the jury does not get the indictment. So the jury got just the jury instructions which outline the charges, and I don't think that the conspiracy instruction informed the jury that false statements remain in the country were one of the objects of the conspiracy. So instead, the jury gets back there the fact, this man's made false statements that allowed him to stay in the country. That shows us he's illegal. And again, getting back to Judge Rawlinson's question about the strength of the government's case, although there was evidence that Mr. Derry worked at the company, it was for he started working at the company. He moved to Seattle in March. The company had been ongoing for about a year. Of over three dozen customers that were called to testify about their contacts with the company, only one customer had contact with Mr. Derry. Only one of the government's witnesses, the cooperating co-defendants, really supplied any what would be called incriminating evidence regarding Mr. Derry's role in the company. The other employees that were called who were cooperating just said Mr. Derry worked as a dispatcher in the company when he moved to Seattle. He was in the office. He had nothing to do with making the estimates to the customers. It brings me back to the fact that if Judge Burgess found there was insufficient evidence not only to support the false statement charges, but the wire fraud counts and the substantive extortion counts, all of those dismissed for insufficiency of evidence, then that I think suggests that the government's case against Mr. Derry was not very strong. And the test for the harmless error test is whether or not it's more probable than not that the evidence didn't affect the jury. And I don't think we can say that here. Here, again, looking at the special verdict, the dismissal of the charges, and the very limited role Mr. Derry played in when you look at the whole picture. Because if you look at the whole picture, the government calls over 50 witnesses. They're alleging a loss of over a $70,000 responsibility for Mr. Derry. I would suggest that he was prejudiced by this admission of evidence and ask the Court to find that that is the case. All right. Thank you, counsel. We'll hear from the government. May it please the Court and counsel, I'm Catherine Worma, Assistant United States Attorney on behalf of the United States. Your Honors, it is the position, of course, of the government that these charges were properly joined in this case, that the evidence that went to prove the counts of the conspiracy, as well as the false statement charges, was intertwined. And an important factor to remember in that regard is once a decision had been made to bring for Yuval to join this conspiracy, he was at risk for remaining a participant in the conspiracy unless he could remain in the United States. There was an effort beginning in October of 2002 to continue his presence in the United States that involved Mr. Derry and another of the co-conspirators. His brother and sister-in-law? Yes, Your Honor. I can understand. There are cases where somebody involved in a conspiracy wants to keep the other people there and it's useful to have unlawful aliens. It's a harder connection to suggest that the motivation of these co-conspirators was the economic motivation of having him to work or the personal relationship that existed between relatives. So I hear the argument, but I'm not sure that it really fits these facts all that well. Well, I think, Your Honor, if you look at the second incident of the false statement, the false statement that was filed in April. The later in time one? The later in time one, Your Honor. That one I can understand. It's the earlier in time one that gives me a degree of pause, because by that time, at least as the evidence we see it now, the direct evidence of him working for the company comes later in time. At the earlier point in time where he said he had not worked up to that point, I don't see any evidence that he is, in fact, involved in the nationwide program. Well, and that may have been what that evidence would have helped prove. We know for a fact that he was involved at the latest in January of 2003. And when you think about his involvement at that point, he was a foreman on the move for Joni Carr, he knew the drill exactly. He was he operated as a foreman in that move absolutely according to the book of nationwide. He had to have been involved in the conspiracy prior to January of 2003, the day that he walked into that move, because he knew exactly what the drill was. He performed according to the nationwide scheme and plan. And at one point, the point at which he may have become first involved was that trip to Washington in October of 2002. The company was up and running. The scheme was in place. At that time, the false statement was filed. Within three months of that time, he is on the ground for nationwide working as a foreman and extorting a company. He physically takes the place of the manager who had left. We know certainly he was involved in a daily basis operating the scheme, working as a manager for the company. A piece of evidence that I would like to emphasize that has been overlooked is the fact when counsel talks about the limited evidence of his partition in the company, there was an exhibit, and it was Exhibit 52.2 that was offered by the government that was an application to rent an apartment filed by Yuval Derry. In that application to rent the apartment, he identified himself as a supervisor for nationwide moving, earning a salary paid by nationwide moving. That was very powerful evidence, had nothing to do with the his status as an immigrant. It was evidence that was considered by the jury we would submit to reach the finding, including the finding that he was a supervisor and manager for this company, evidence provided by the defendant himself. Was the jury ever informed of the allegation in the indictment that part of the conspiracy was to make false and misleading statements to INS? I don't believe so, Your Honor. And with all due respect, quite frankly, counsel for the government was surprised by the ruling of the court with respect to dismissing the false statement counts. We believe that we had proved those counts beyond any reasonable doubt. Once the judge made that ruling, however, we were in a position to respect it. And at that point, we did not further pursue argument. We did not make a point in closing about that first statement having possibly been the starting point of the conspiracy with respect to the extortion. We backed off that evidence completely because we felt that we should respect the ruling of the district court, excuse me, even though we didn't understand it. They don't give you a lot of options at that point, do they? That's correct, Your Honor. What evidence do you identify that would be affected or would have been excluded, could not have been admitted for the conspiracy and related counts on their own, but came in simply because of the false statement count? So what I'm trying to figure out here is what would have been different if the counts had been severed at the outset? I think that the defendant would have been more able to advocate to the jury that he was not involved in the conspiracy, that the relationship had not been. Let me restate the question. I think I made it clear. What I'm trying to figure out here, and this really goes to Judge Rawlinson's inquiry about harmless errors, okay, suppose it's correct to argue that they should have been severed from the beginning. What's the impact on the case as it was presented? Evidence such as the rental form you described could have come in as proof of the conspiracy because he's volunteering that he's part of Nationwide. During the colloquy with the defense counsel, I was focusing, does that mean all we're talking about here are the two INS forms that he signed where he said he wasn't working? Those presumably wouldn't have come in as evidence of the conspiracy. Is there something else that would not have come in as evidence of the conspiracy? No, I don't believe so, Your Honor. Counsel, what's your response to opposing counsel's argument that the defendant was prejudiced because he was painted as an illegal alien and that tainted him in the eyes of the jury? I don't believe the phrase illegal alien was ever mentioned at any point in this trial. I believe that the special verdict gives us a unique opportunity to see what sorts of things influence the jury because we have very discreet findings. One of those, for example, that he was a supervisor or manager. The false statement on the visa extension application has no bearing on that. As I said, there was a statement by the defendant himself, an application in which he identified himself as a supervisor for this company. The government does not believe that he was prejudiced in any way by the false statement evidence. Again, it was we emphatically did not ever characterize this individual as an illegal alien. Counsel, what evidence of materiality was introduced to support the false statement charge? That was testimony from Agent Kagan with respect to the consequences that would have flowed from an honest report on the false statement charges by Yuval as well as honest information that would have been provided by the co-conspirator in the government's view, Tanya Derry, when she filled out the forms on behalf of the company and she hid his employment at the company. There would have been consequences in either case from truthfully reporting the situation. The government, again, Your Honors, believes that the charges were properly joined, that it was no error in that regard, and that even if there was error, it would have been harmless. If there are no further questions? It appears not. Thank you, Counsel. Rebuttal? Thank you, Your Honor. The visa application forms that are in the excerpt of record weren't necessary to the government's case. They didn't lend any evidence to support any material element of the conspiracy charge. The evidence wasn't intertwined. The evidence introduced as to the false statements came from Special Agent Kagan, and really that's all he testified about. He was the vehicle to introduce these forms. There was no overlap in the evidence that was presented to the jury. The government never used the term. The overlap would have come in the working part. Yes. And that would have been part. I mean, if you'd had a separate trial on the false statement counts, you'd still need the working part. So that part overlaps. Sure. I'm not saying that's necessarily sufficient, but it's not that they're entirely unrelated. At least for the later in time form, the working part seems to me is appropriate evidence for either theory, either the conspiracy theory or the false statements theory. I agree to that extent. But if we were here today and we were talking about a trial that took place on the false statement charges, and the government introduced evidence of the extortion and wire fraud and was arguing, well, that was necessary to support the false statement charges, all that would be necessary would be the fact that he was employed, and that would be what was material. We didn't argue at trial that he wasn't employed at the company. We didn't – if we had come forth and said, no, he never worked for this company, we might – the issue would be different. Well, that helps lead to my confusion as to why these counts were dismissed, because it didn't seem to me that there was much contest over whether or not he had made a statement that turned out to be false. That's, I mean, not something anybody can address now, but it's kind of confused me as I've approached this case from the beginning. But the – but the essence of the prejudice, we believe, is twofold. One is he lied on the forms. Therefore, a jury could say, okay, well, that supports the fact that he might have lied to customers. And two is, although the government never used the term illegal alien, they don't have to use that term. When you've got an immigration form and you present it to the jury indicating that an alien lied on that form, in order to be able to stay in the country, that, you know, makes them an illegal alien. You don't have to use the form. You've got those forms right  there. I submit that it was error to join the charges, that it was certainly error to fail to sever before trial. But did they really have the forms in the jury room? Yes. The forms. Even after the – those counts were dropped? Yeah. We moved to strike the evidence. I'm surprised the paper himself wasn't pulled out. No. But it was not. We asked the judge to strike the evidence, and the judge declined that. And so these are the kinds of things that we have to learn from. And that, we believe, is a part of the prejudice in this case. Did the judge give a reason for denying your motion to strike the evidence and prevent the forms from going back in? In his written minute order, the judge said, and I want to be – excuse me, Your Honor, I want to be precise. The state of mind reference? It was. The judge said in the order that evidence – evidence is indicative of state of mind and intent, and counsel may argue facts and evidence. So the government could have, in closing argument, addressed this if – that's the way I read the order. But that was the ruling of the judge. So the jury did have the forms. They had heard the opening statement. They had heard the testimony of Special Agent Kagan. We believe that that prejudiced Mr. Derry and caused this trial to be unfair. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our oral argument calendar for today. And we are in recess until 9 o'clock a.m. tomorrow morning.
judges: Rawlinson, Clifton, Burns